FRANCES WESTROPE v. T. J. CHAMBERS' ESTATE.

1. COVENANT OF RIGHT TO SELL—LIMITATIONS.—The covenant of title and right to convey land contained in a deed, is broken on the delivery of the deed, if the vendor had no title. Limitation would run for breach of such covenant from the delivery of the deed.
2. GENERAL WARRANTY.—The grantee in a deed with general warranty is not compelled to await actual ouster by judgment of a court before bringing suit upon such covenant; but on yielding possession and suing upon the warranty, he assumes the burden of proof, and is compelled to establish the superiority of the adverse title.
3. CONSTRUCTION OF STATUTES—TITLED OR SURVEYED.—The act of February 5, 1850, (Paschal's Dig., art. 809,) "That no certificate of land, land warrant, or evidence of land claim of any kind whatever, shall hereafter be located upon any land heretofore titled or surveyed within the limits of the colonies of Austin, De Witt, and De Leon," &c., held to protect from relocation, in 1863, a league of land titled July 29, 1824, in Austin's colony, but which had been declared null and void by action of the ayuntamiento December 15, 1830.
4. ACTION ON WARRANTY—EVIDENCE.—In action upon warranty, the adverse title asserted being the relocation upon such land, did not show a superior outstanding title.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

This suit was commenced May 12, 1866, in the District Court of Chambers county, for Miss Fannie Westrope, minor, by E. Keough, then her guardian, and was afterwards transferred to Galveston. The object was to recover from the estate of General T. J. Chambers the sum of $856, with interest from March 18, 1853, and was in the nature of an action for breach of covenants in a deed of that date executed by Chambers to Thomas Westrope, deceased, father of plaintiff, wherein Chambers acknowledges the receipt of the above sum of money, and in consideration thereof conveyed to Westrope eight hundred acres of land on Clear Creek, part of which is known as the John R. Williams league, situated partly in Galveston county and partly in Harris county, and within the boundaries of Austin's colony. The covenants in the deed were, that Chambers had full right to sell said land and would warrant and defend the title thereto.

The original petition alleged the execution of the deed from Chambers; the payment of $856, by Westrope, March 18, 1853; the description of the land mentioned in the deed; the allotment thereof to Miss Westrope, plaintiff; the covenant in the deed "that Chambers had full right to sell," and that therein said covenant was broken; that Chambers did not have the right to sell, and that this fact was not discovered until after the partition thereof; the presentation of the claim duly verified, and rejection by administratrix of Chambers' estate, March 13, 1866.

The amended petition, filed June 5, 1872, alleged, in addition, that Chambers did covenant with Westrope that he (Chambers) had full right to sell said land and would warrant and defend the title thereto; that Chambers and his legal representatives had not warranted nor defended the title thereto; that the same was not the property of Chambers, but when the deed was made the land was part and parcel of the public domain of the State of Texas, and so

continued until the 6th .of September, 1863, when the State patented the same to William R. Baker, assignee of Sarah McKissick; that about January 1, 1866, Baker entered into and took possession thereof, ejected plaintiff, and hath since continuously retained possession; that Chambers and his representatives have not kept the covenants aforesaid, but have broken the same; and prays for relief.

Defendant's answer filed June 7, 1867, is a general demurrer and general denial.

Amended answer filed February 27, 1872, was a plea of statute of limitation; and amended answer filed December 7, 1872, says they admit the land mentioned in the petition was granted to John R. Williams prior to March 18, 1853, and prays that plaintiff take nothing.

J. D. Oltorf, administrator, filed his answer May 21, 1877, and adopted the answers previously filed.

The plea of limitation was overruled by the court.

Plaintiff offered in evidence (1) a certified copy of deed from Chambers to Westrope, dated March 18, 1853, with affidavit of loss of original; (2) a claim for $856 principal, with eight per cent. interest, amounting February 23, 1866, to $885.47, duly verified, with rejection of the administratrix. thereon; (3) a patent from the State to W. R. Baker, dated September 6, 1863, for the same league described in Chambers' deed as having been granted to John R. Williams; (4) map prepared by John O. Trueheart, district surveyor, of the lands in controversy; (5) depositions of Trueheart, who knows the parties, has been surveyor ten or twelve years, knows the tract of land, and that it is the same league generally known as the J. R. Williams league, patented to William R. Baker; (6) decree of ayuntamiento dated December 15, 1830, giving action of that body in reference to several parties, declaring that John R. Williams had abandoned the country and had never complied with the requisites of the colonization law, by not cultivating the league, and that all title and claim which the concession had vested in him had expired when he aban-

doned the country, and that the league is declared vacant and the title for it null and void. (This is given in full in 49 Tex., 458.)

It was shown that in partition the tract of eight hundred acres had been allotted to the plaintiff; also that the title had been considered good until Baker took possession of the land, a short time before suit was brought; payment of taxes, &c.

After giving the boundaries of Austin's colony, the court charged as follows: "I charge you that from and after the 5th day of February, 1850, there could be no location within the limits of said colony upon any lands therein which were titled or surveyed prior to the 5th of February, 1850. If you believe from the evidence that the eight hundred acres of land described in the petition was within the limits of Austin's colony; and if you further believe from the evidence that said eight hundred acres of land had been titled or surveyed prior to the 5th day of February, 1850, and was within the John R. Williams grant; and if you further believe from the evidence that the location and patent from the State to William R. Baker was subsequent to the 5th day of February, 1850, then the plaintiff could not recover; and in that case, if you so believe the above proposition, you will find for the defendant. But if, from the evidence, you do not believe the foregoing propositions, then your verdict should be for the plaintiff for $856, with interest from March 18, 1853, at eight per cent."

There was a verdict for defendant and judgment accordingly. Plaintiff appealed.

*Wharton Branch,* for appellant.

I. The charge does not present the issues of fact. (Paschal's Dig., art. 1464; Castro *v.* Illies, 22 Tex., 504; Gilkey *v.* Peeler, 22 Tex., 668.)

The court submitted a question of law to the jury, in this: As to whether the eight hundred acres had been titled or

surveyed. (Bradshaw v. Mayfield, 24 Tex., 482; San Antonio v. Lewis, 9 Tex., 71; Swift v. Herrera, 9 Tex., 281.)

The charge diverts the minds of the jury to inquiries foreign to the case, in this: The only question is, whether there was title in Chambers. (Love v. Wyatt, 19 Tex., 315, 316; Dean v. Lyons, 47 Tex., 20.)

The charge is in the alternative, in this: The presumption of title in Chambers is made to depend simply on the dates of a patent to William R. Baker and an act of the Legislature respectively. (Grimes v. Bastrop, 26 Tex., 314.)

Vacant land is subject to location in Austin's colony or in any part of the State. (Paschal's Dig., art. 4526.)

Where a concession or title has been cancelled, the land embraced in it is vacant, and is as vacant as if it had never been titled. (Jennings v. De Cordova, 20 Tex., 508.)

Where a survey has been abandoned or cancelled, the land is vacant, and is as vacant as if it had never been surveyed. (Hollingsworth v. Holshousen, 17 Tex., 47, 48; Bowmer v. Hicks, 22 Tex., 155.)

The ayuntamiento had cancelled the concession to John R. Williams of the league of land of which the eight hundred acres is part prior to February 5, 1850, and it was then vacant, and had long been so.

The ayuntamiento was a court of competent jurisdiction to cancel grants of land to settlers. (Holliman v. Peebles, 1 Tex., 673; Marsh v. Weir, 21 Tex., 108; Summers v. Davis, 49 Tex., 541.)

No conveyance from Williams to any one could have defeated the action of the ayuntamiento. (Desmuke v. Griffin, 10 Tex., 114; Ledyard v. Brown, 27 Tex., 404; Thomas v. Moore, 46 Tex., 433.)

A fundamental error pervading the charge is, that it assumes that the act of February 5, 1850, (Paschal's Dig., art. 809,) sweeps away the decrees of the ayuntamiento for all purposes, and that wherever a surveyor had run a line or any title had been extended, whether void or voidable, cancelled

or not, the land was reserved from location, and that patents thereon thereafter issued were void. (Marsh v. Weir, 21 Tex., 108.)

II. The charge of the court is not responsive to the issues presented in this case.

The charge misled the jury in this material point: that their minds are directed to find whether the statement in Chambers' deed, that the eight hundred acres was part of the Williams league, is true; which is immaterial. The true inquiry is, whether the statement in Chambers' deed, that he has a right to sell the land, is true. (Bailey v. Mills, 27 Tex., 438.)

III. The charge of the court makes the right of plaintiff to recover depend upon a pretended issue wholly immaterial to the case.

The relation of vendor and vendee is not created where one assumes to sell vacant land; not being in possession, he conveys no right to the land; is unable to do so for want of title. On discovering this, it is the right of plaintiff to recover the money paid, with interest. (Wheeler v. Styles, 28 Tex., 244; Spier v. Laman, 27 Tex., 215; Jennings v. De Cordova, 20 Tex., 513; Cravens v. Brooke, 17 Tex., 272; Rodgers v. Daily, 46 Tex., 583.)

The issue submitted by the charge is, whether the land had ever been titled or surveyed; whereas, if the real condition of Williams' title had been relevant, the true inquiry must have been, whether such title or survey was in existence on February 5, 1850. (Paschal's Dig., art. 809.)

IV. The facts in this case are not sufficient to authorize the presumption of a grant or title to John R. Williams. (Grimes v. Bastrop, 26 Tex., 315; Taylor v. Watkins, 26 Tex., 692, 693; Dailey v. Starr, 26 Tex., 565; Biencourt v. Parker, 27 Tex., 563, 564.)

The only thing in evidence is the recital in the decree of the ayuntamiento that the concession of the league of land on Clear Creek to John R. Williams is annulled.

The burden of proof was on us to make out the adverse

title, and was on the defendant to show the right of Chambers to sell any part of the headright league of John R. Williams, either as his heir, assignee, or agent. (Hensley *v.* Peck, 20 Tex., 675; Bailey *v.* Hicks, 16 Tex., 226; Scranton *v.* Tilley, 16 Tex., 193; Chandler *v.* Meckling, 22 Tex., 44.)

The effect of offering in evidence the decree of the ayuntamiento, was to show that title to the land remained in the government, and that Chambers' deed passed no title to Westrope. (Jennings *v.* De Cordova, 20 Tex., 512, 513.)

The effect of offering in evidence the patent to William R. Baker, was to show that title to the land remained in the government down to September 6, 1863, and was in making out adverse title in William R. Baker, showing that Chambers did not have title at the date of the patent and could not afterwards acquire it except from Baker.

V. The charge of the court assumed that the act reserving lands from location in Austin's colony reserves from location all vacant domain in said colony; and this is error.

The intention was to reserve lands to some class of settlers, or their heirs or assigns, and not to cause either vacant lands to remain vacant forever, or to validate void claims, (such as purchase grants within the border leagues,) or to cancel any decree of court which had declared bad any title in Austin's colonies. (Paschal's Dig., art. 809; Gen. Laws of 1856, act of August 27, p. 59.)

VI. The charge of the court assumes that the decree of the ayuntamiento, declaring the land in controversy to be vacant domain, is a nullity; and this is error. (Johnston *v.* Smith, 21 Tex., 724.)

VII. The charge of the court assumes that the act of February 5, 1850, (Paschal's Dig., art. 809,) gave Thomas J. Chambers, deceased, a valid and perfect title to a league of land on Clear Creek, which deceased described in his conveyance to plaintiff's ancestor as the J. R. Williams league on Clear Creek.

The charge of the court overlooks the fact that there is no

evidence of any title in Chambers. (Rogers *v.* Broadnax, 24 Tex., 543.)

The plaintiff's right under the covenant in the deed is not barred. The burden of proof to show that limitation began to run at the date of the deed, March 18, 1853, is on the defendant, who pleads it. (Smith *v.* Power, 23 Tex., 29; Gibson *v.* Fifer, 21 Tex., 264; Mason *v.* McLaughlin, 16 Tex., 29.)

Limitation did not commence to run from the date of the deed against the right of the plaintiff to recover on the breach of covenant, unless the land had been then in adverse possession, nor until the discovery of the defect of title. (Ripley *v.* Withee, 27 Tex., 17; Dart on Vend., pp. 367, 368.)

The covenants were not broken until the entry on the land by William R. Baker, in January, 1866. (Smith *v.* Fly, 24 Tex., 352.)

The covenant that Chambers had right to sell did not, *per se*, become untrue until the land was patented to William R. Baker. (Jennings *v.* De Cordova, 20 Tex., 514, 515.)

The covenant of warranty is prospective; it runs with the land, and is not barred until at least four years after eviction. (Gibson *v.* Fifer, 21 Tex., 264; Ackerman *v.* Smiley, 37 Tex., 215, 216; 4 Kent's Comm., lec. *67, pp. 471–473.)

The fact as to when limitation to the right to recover on the covenants started, is not changed by the plaintiff's yielding to a dispossession by one having a paramount title, instead of incurring the delays and cost of defending a bad title and suffering eviction by decree of court. (Mason *v.* McLaughlin, 16 Tex., 29; Simpson *v.* Belvin, 37 Tex., 683.)

If Chambers really had no title at the date of his deed, the recitals in the deed are both false in suggestion and conceal and suppress the truth, and suspend limitation until the discovery of the defect or want of title. (Ripley *v.* Withee, 27 Tex., 17; Wintz *v.* Morrison, 17 Tex., 383, 384.)

VIII. The charge of the court should have instructed the jury, that where the vendee has purchased under a convey-

ance with covenants and warranty, and has paid the purchase-money, he was entitled to recover the money back, with interest, unless the vendor could show a perfect title in himself and right to convey. (Wintz *v.* Morrison, 17 Tex., 385; Scranton *v.* Tilley, 16 Tex., 194; Green *v.* Chandler, 25 Tex., 155–161.)

Where the entire failure of title is shown, the purchaser may recover back the price paid without eviction. (Peck *v.* Hensley, 20 Tex., 677, 678; Tarpley *v.* Poage, 2 Tex., 147; Laurans *v.* Garnier, 10 Rob., 425.)

The ouster by Baker being lawful, plaintiff had the right to yield to a dispossession and have the remedy on the covenants, without involving herself in a lawsuit to defend a bad title. (Peck *v.* Hensley, 20 Tex., 678; Hamilton *v.* Cutts, 4 Mass., 349; Calicote *v.* Spencer, 25 Tex. Supp., 152.)

In order to recover the land from Baker's possession, the claimant must show title from the sovereignty. It was useless for plaintiff to attempt it unless she could be furnished with conveyances from the government down to Chambers. (Hughes *v.* Lane, 6 Tex., 291; Kinney *v.* Vinson, 32 Tex., 127; Hooper *v.* Hall, 35 Tex., 83, 84.)

Under the charge, Chambers has obtained something, viz., $856, and Westrope nothing; it is inequitable for him to retain it; the proper remedy has been sought. (Wheeler *v.* Styles, 28 Tex., 243, 244; Spier *v.* Laman, 27 Tex., 205.)

IX. The words "titled or surveyed," in the act of 5th February, 1850, (Paschal's Dig., art. 809,) mean a title extended by a commissioner of the Mexican Government and a survey made by a surveyor appointed according to law, and made upon proper authority under a valid concession or certificate, and not afterwards lifted and relocated, nor made vacant by decree of court or abandoned by the party. (Jennings *v.* De Cordova, 20 Tex., 515.)

The charge of the court does not define what is meant by the words "titled or surveyed," and the jury were misled thereby. (Beale *v.* Ryan, 40 Tex., 399.)

*J. W. Harris,* for appellee.    [No brief reached reporters.]

BONNER, ASSOCIATE JUSTICE.—The deed from T. J. Chambers to Thomas Westrope, under whom plaintiff claims, contains these two covenants:

1. One, that Chambers had full right to sell and convey the land.

2. The other, of general warranty of title.

The charge of the court did not present to the jury any issue upon the covenant of right to sell and convey, and it might be sufficient to dispose of this branch of the case to say that no special charge was asked. It seems, however, that under the statute of limitations, pleaded by the defendant, the right to recover for a breach of this covenant was barred by limitation, and hence the plaintiff cannot complain.

The deed from Chambers to Westrope was dated March 18, 1853. Westrope died in 1860. This suit was instituted May 12, 1866.

According to Mr. Rawle, the strong current of American authority is in favor of the position that the covenant for right to convey is one *in presenti,* and if broken, the breach occurs at the moment of its creation; the covenant, in effect, being that a particular state of things exists at that time, and this not being true, the delivery of the deed which contains such a covenant causes an instantaneous breach. (Rawle on Cov. for Tit., 344–348.)

This narrows the question down to plaintiff's right to recover on the alleged breach of general warranty of title. The old rule, which required the purchaser to hold possession until ousted by judgment of a court, is now repudiated as being inconsistent with the principles of justice; as, in many instances, he would, by the delay, not only imperil his chances to ultimately secure his claim against the vendor, who might waste or otherwise dispose of his property, but would add additional damage by way of costs in defending a hopeless lawsuit.

In adopting, however, the course of voluntarily surrendering the premises, the vendee must do so at his peril, and must assume the responsibility of determining upon the chances of success; and in the suit against the covenantor must assume the burden of proof and make out the adverse title to which he has yielded   (Rawle on Cov. for Tit., 260–265.)

In this case the plaintiff voluntarily yielded to the patent to William R. Baker, assignee of Sarah McKissick, of date September 6, 1863, and hence the case must depend upon the validity of that title.   This is virtually settled against the plaintiff by the case of Summers *v.* Davis, 49 Tex., 541, and Truehart *v.* Babcock, 49 Tex., 249.

The John R. Williams league, a part of which purported to have been conveyed by the Chambers deed, and which was covered by the patent to Baker, was titled and surveyed land of Austin's colony before February 5, 1850, and by the rulings of the above cases would come within the provisions of the statute of that date.   (Paschal's Dig., art. 809.)

The John R. Williams grant was declared forfeited by the decree of the ayuntamiento.   The tendency of this court has been to respect such decrees as conclusive when they had been acted upon by the proper authority by a regrant of the land thereby declared forfeited.   The regrant in this case, however, to William R. Baker, was subsequent to the passage of the act in question.

Had the plaintiff made out a *prima-facie* case against the covenantor, by having stood the test of a suit in which judgment had been rendered against the Chambers title and in favor of the patent to William R. Baker, this *prima-facie* case was fully rebutted by the facts as applied to the law of this case, which show the invalidity of the title to Baker.

The plaintiff, then, having voluntarily yielded to a title under which her claim and possession could not have been disturbed, she cannot recover for the alleged breach of covenant of warranty, and the judgment below must be affirmed.

AFFIRMED.